IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Thomas B.,[1]

    Plaintiff,

v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

    Defendant.

**Civ. No. 1:18-cv-00253-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Thomas B. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether the Administrative Law Judge ("ALJ"): (1) gave clear and convincing reasons for rejecting the testimony of the Plaintiff; (2) erred in posing hypotheticals to the vocational expert; and (3) erred in rejecting medical opinions of two treating physicians. Because the ALJ erred in discounting both Plaintiff's testimony and that of his treating physicians, the Commissioner's decision is REVERSED and this matter is REMANDED for an award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB February 5, 2014 and alleges disability since June 14, 2013. Tr. 100, 228.[2] His claim was denied initially and upon reconsideration. Tr. 156–61; 163–65. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable B. Hobbs on October 4, 2016. Tr. 166, 79. ALJ Hobbs denied Plaintiff's claim by a written decision dated December 2, 2016. Tr. 60–73. Plaintiff sought review from the Appeals Council and was denied on December 11, 2017, rendering the ALJ's decision final. Tr. 212, 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 47 years old at the time of his alleged disability onset and 50 at the time of his hearing. Tr. 125–26. Plaintiff completed 10th grade and worked for the Army Air Force Exchange Service in retail, in sales, doing labor in a warehouse, cleaning, and cashiering. Pl.'s Br. 2, ECF No. 11; tr. 85–90. Plaintiff alleges disability due to rheumatoid arthritis, COPD, and back, knees, neck, and shoulders issues. Tr. 125, 234.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978,

---

[2] Plaintiff initially alleged disability since April 23, 1966, his date of birth, and listed his potential onset date as June 14, 2013, the day he stopped working. Tr. 125–26. He later alleged disability since June 14, 2013. Tr. 100, 102, 228.

980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Dr. Greene and Dr. Walker's Medical Opinions

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion,

an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Here, Plaintiff concedes that the examining physicians' findings are in conflict but argues that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Greene and Dr. Walker's medical opinions. Pl.'s Br. 9–10. The ALJ did not expressly reject Dr. Greene's November 12, 2014 medical opinion. Rather, the ALJ said that Dr. Greene "assessed" Plaintiff with fibromyalgia but could not definitively diagnosis him. Tr. 64; *see also* tr. 1141. Dr. Greene found 18 out of 18 tender points, consistent with fibromyalgia. Tr. 1141. His assessment included "*probable* seropositive rheumatoid arthritis," "*probable* right knee [degenerative joint disease]," and "fibromyalgia," which he said "*certainly* complicates matters." *Id.* (emphasis added). Dr. Greene also recommended that Plaintiff wean off narcotics use because they "make fibromyalgia worse." *Id.* This is a definitive diagnosis.

Similarly, the ALJ did not expressly reject Dr. Walker's medical opinion, but rather undermined it with little explanation. Finding Plaintiff's spinal condition to be a non-severe impairment, the ALJ found that Dr. Walker identified a degree of spinal cord compression at C5-6 but only discussed "protective/preventative" surgery with Plaintiff. Tr. 63–64; *see also* tr. 1241. On January 21, 2016, Dr. Walker diagnosed Plaintiff with "quite severe" adjacent level spondylosis—age-related degeneration of the spinal disks in the neck—at C5-C6. Tr. 1220.[3] The

---

[3] Plaintiff failed to indicate which diagnosis the ALJ allegedly improperly rejected. *See* Pl.'s Br. 10. Plaintiff earlier cited to a January 21, 2016 report where Dr. Walker diagnosed Plaintiff with "quite severe" adjacent level spondylosis at C5-6, which is part of the cervical, not lumbar, spine. *Id.* at 8; *see* tr. 1220. The Court assumes that this was the diagnosis Plaintiff was referring to.

4 – OPINION AND ORDER

ALJ wholly overlooked this report. On May 2, 2016, Dr. Walker noted robust fusion of Plaintiff's cervical spine at C6-C7, a broken anterior cervical plate, and spinal cord compression at C5-C6. Tr. 1241. He diagnosed Plaintiff with cervical spondylosis with myelopathy—compression of the cervical spinal cord—and spinal stenosis (i.e. narrowing) of the cervical region. *Id.* He also discussed a protective/preventative surgery with Plaintiff. *Id.* This indicates more than "a degree of spinal cord compression," and the protective/preventative nature of the surgery does not necessarily render it conservative treatment.

The ALJ failed to give specific and legitimate reasons supported by substantial evidence for disregarding Dr. Greene's and Dr. Walker's medical opinions.

**II. Plaintiff's Credibility and Fibromyalgia**

Plaintiff next argues that the ALJ improperly rejected both Plaintiff's symptom testimony and the medical opinion of Dr. Greene with respect to fibromyalgia. Pl.'s Br. 5–6.

**A. Plaintiff's Credibility**

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040.

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Here, Plaintiff testified that he stopped working due to his rheumatoid arthritis, COPD, and back and neck operations. Tr. 90–91. He has daily issues with his arthritis in his his arms and most of his joints. Tr. 92. His pain is mild when he takes his weekly injection, then progresses to severe three or four days before the next injection. Tr. 92–93. He has pain in his lower extremities and, if he gets on his knees, they hurt badly ten minutes later. Tr. 93. He cannot walk

very far because his ankles, feet, and heel hurt. If he does, he must rest for a week. Tr. 91, 93. The last time he hurt himself he could not move for a month and a half. Tr. 91. He does not go to the gym or mow the lawn but does light yard work, such as planting plants. *Id.*

Plaintiff said his fibromyalgia is worse than his rheumatoid arthritis and the pain is consistent daily. Tr. 93–94. He wakes up in pain and sometimes his wife has to help him out of bed. Tr. 94. If the pain subsides and he does strenuous work, he becomes short of breath and his pain intensifies. *Id.* He can be on his feet only fifteen minutes before needing to rest and is only able stand and walk for fifteen minutes before having to change position. *Id.* He can sit for twenty minutes before having to change position, then he has to get up and stretch his back and shoulders because they start to ache. Tr. 94–95. The pain in his arms and neck is different than his fibromyalgia and rheumatoid arthritis pain and becomes overwhelming when he is about to take his weekly injection. Tr. 95. He does not lift anything if he does not have to, but he estimates he could "maybe" handle ten pounds if he was required. *Id.* He loses his grip on things routinely. Tr. 96.

Plaintiff has had 7 operations and his doctors recommend that he have two more on his neck and back. Tr. 96. His neck pain is constant. The pain in his elbows, wrists, hands, and fingers pain is 6 out of 10 when at rest. With movement or exertion, the pain intensifies to 9 or 10. *Id.* For example, his hands hurt badly after doing the dishes. Tr. 96–97. He also has abdominal pain from his back and stomach cramps every day, depending on how much he exerts himself, which dissipate after he lies down for 30 minutes then returns after he resumes activity. Tr. 97–98. He has to lay down for 30 to 60 minutes 4 times per day every day. Tr. 98.

The ALJ found that the objective medical evidence fails to provide "strong support" for Plaintiff's allegations of disabling symptoms and does not support limitations greater than reported in the RFC statement. Tr. 68. The ALJ also found that Plaintiff's allegations were generally not consistent with the medical record and that his activities are not limited to the extent that one would expect given his complaints. Tr. 71. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 72.

Specifically, the ALJ found that Plaintiff's polyarthralgias in his hands "appeared assuaged by conservative measures," citing a January 23, 2013 report where Plaintiff was fitted for nighttime wrist splints and medications "moderately helped" control his symptoms. Tr. 68; *see* 410. By that time, however, Plaintiff had experienced 8 to 9 months of hands and fingers pain, swelling, decreased range of motion, and decreased strength with grasp and lifting. Tr. 410. He could only fully extend and spread his digits slowly, and although there was no obvious tenderness, he had articular fullness across the distal interphalangeal, proximal interphalangeal, and metacarpal phalangeal joints. Tr. 411. Additionally, an elbow examination revealed markedly restricted flexion and extension. *Id.*

The ALJ also noted that on March 20, 2013, Plaintiff's hand pain "improv[ed] dramatically" since he started taking methotrexate. Tr. 68; *see* tr. 399. However, Plaintiff's hand pain returned on numerous occasions and is well-documented throughout the record. On April 3, 2013, Plaintiff had arthralgias, soft tissue swelling of the finger, and increased joint pain, especially in the elbows, hands, wrists, and right knee. Tr. 392. His fingers, wrists, elbows, knees, and ankles showed abnormalities. Tr. 394. Shoulder motion elicited pain. *Id.* Plaintiff

started taking 10 mg of methotrexate weekly in late February 2013, which helped initially, then he had periods of pain, stiffness, and swelling. Tr. 392. The pain limited his range of motion in "most joint areas," especially his shoulders, elbows, wrists, and right knee and significantly limited him and his ability to complete tasks at work. Tr. 392–93.

On April 5, 2013, Dr. George Mount, M.D., prescribed Plaintiff 20 mg of prednisone daily to treat his rheumatoid arthritis and increased his methotrexate from 10mg to 15mg weekly. Tr. 390. On April 9, Plaintiff noted improvement in joint swelling and stiffness. *Id.* By August 27, Plaintiff said all his symptoms returned each Sunday, and his pain was so bad it made him cry. Tr. 368. Dr. Mount tapered Plaintiff's prednisone use because he had been on it for so long but increased his methotrexate dose to 17.5 mg. *Id.* As of October 21, 2013, Plaintiff's symptoms had increased to 8 out of 10, his joint pain started in his hands bilaterally then worsened acutely in his right hand and spread to his right elbow and shoulder, and he could barely lift a cup. Tr. 351. The next day, his pain had improved and he could lift a cup after using a Lidocaine patch and Ibuprofen. Tr. 346.

As of November 7, 2013, Plaintiff had continued arthralgias of the hands and pain elicited by motion in his right hand, elbow, and shoulder, but no weakness. Tr. 341. By January 21, 2014, Plaintiff still had diffuse arthralgia, joint stiffness, and mild swelling plus decreased flexion/extension at the wrist and pain on full flexion of the digits of the hands. Tr. 323–25. He had tenderness to palpation at most joint locations, especially at the shoulders, right, elbow, right wrist, and right metacarpal phalangeal and proximal interphalangeal joints. Tr. 323. The ALJ said that despite Plaintiff's reports, a review of systems on May 20, 2016 was negative for joint

swelling. Tr. 72; *see* tr. 1263. But as previously discussed, Plaintiff's joints were swollen upon multiple examinations. *See* tr. 325, 353, 392, 444.

The ALJ also found that Plaintiff's back pain "appeared mild in nature," citing a March 20, 2013 report where Plaintiff complained of chronic pain but a review of systems was negative for back pain. Tr. 68; *see* tr. 399–400. Yet the ALJ admitted that physical examination revealed lumbosacral muscle spasms and lack of full range of motion of the thoracolumbar spine due to pain. Tr. 401. The ALJ also noted that on September 23, 2013, Plaintiff exhibited normal gait and stance and right foot tenderness to palpation, but findings were otherwise normal and indicated full range of motion and strength. Tr. 364.

The ALJ then noted that imaging on October 21, 2013 revealed only "age-related" degenerative changes in Plaintiff's thoracic spine. Tr. 69; *see* 460. However, this imaging also suggested decreased disk space height at C5-C6, causing a concern for degenerative disk disease. Tr. 460; *see* tr. 103, 338, 459. Additionally, Plaintiff had significant endplate spondylosis at multiple levels, most severely at L4-L5, and decreased disk space height there as well. Tr. 459. A review of systems on May 7, 2015 was positive for back pain. Tr. 1263. Moreover, as the Administration's medical expert, Dr. Joselyn Bailey, M.D., explained, fibromyalgia and rheumatoid arthritis are "significant exacerbation component[s]," and multifactorial causation would cause Plaintiff back, knees, shoulders, fingers, arms, wrists, and neck pain. Tr. 112.[4]

The ALJ next turned to Plaintiff's rheumatoid arthritis, documenting its improvement as of October 10, 2013, November 7, 2013, December 20, 2013, January 21, 2014, November 12

---

[4] The ALJ gave little weight to Dr. Bailey's opinion. Tr. 71. The Court, however, finds that her opinion is supported by the medical record. Dr. Bailey referenced specific facts in the record throughout her testimony. *See* tr. 102–12. Further, as explained in this Opinion, Plaintiff was diagnosed with seronegative rheumatoid arthritis and his rheumatoid factor test was weak positive, which is congruous with Dr. Bailey's testimony. *See* tr. 1144.

10 – OPINION AND ORDER

2014, and November 20, 2014. Tr. 69–70. The relevant medical evidence is summarized as follows. Plaintiff was diagnosed with seronegative rheumatoid arthritis as early as March 20, 2013 and was prescribed "high-risk" medication for it. Tr. 397, 357; *see also* tr. 325, 329. On October 10, 2013, Plaintiff reported hand and finger improvement but soft tissue swelling of a finger, continued right elbow discomfort, right foot pain, and morning stiffness. Tr. 353. He was tolerating methotrexate without issue and his rheumatoid arthritis had improved, but low disease activity continued. Tr. 357. On November 7, 2013, his pain had improved but he still had right arm pain and right hand, elbow, and shoulder pain elicited by motion. Tr. 340–41.

By November 12, 2013, Plaintiff felt significantly better overall and was generally unlimited in mobility, but his hand and joint pain was relatively unchanged. Tr. 335–36. On December 20, 2013, Plaintiff's pain was well-controlled with medication. Tr. 329. On January 21, 2014, Plaintiff had generally unremarkable plain imaging but was diagnosed with moderate to severe lifestyle limiting arthralgias and myalgias—joint and muscle pain—despite taking 17.5mg of methotrexate per week. Tr. 325. Notably, Plaintiff had tenderness to palpation at most joint locations and fingers, elbows, and shoulders abnormalities. Tr. 323–24.

The ALJ said that laboratory testing on November 2014 did not show evidence of rheumatoid arthritis, when in fact it revealed abnormal rheumatoid factor, putting Plaintiff in the weak positive range. Tr. 70; *see* tr. 1140–44. The ALJ also noted that Dr. Green "assessed" Plaintiff with probable seropositive rheumatoid arthritis but could not diagnose him. Tr. 70; *see* tr. 1140–41. However, Plaintiff was previously diagnosed with seronegative rheumatoid arthritis, as explained above. As Dr. Bailey explained, seronegative disease is a "known factor in medicine" whereby one can have a condition despite negative blood tests. Tr. 105. Dr. Bailey

11 – OPINION AND ORDER

agreed with the diagnosis and said that Plaintiff's rheumatoid arthritis must have been significant if he was prescribed medication as heavy as Humira and methotrexate. Tr. 103–05.

The ALJ also contrasted Plaintiff's statement that he endured "a constant state of pain" with office treatment records indicating pain relief. Tr. 71; *see* tr. 283. But even using the ALJ's November 7, 2013 example, Plaintiff's pain level was still a 4 out of 10. Tr. 71; *see* 340. Further, Plaintiff reported decreased relief with hydrocodone and increased overall pain the day before and of his methotrexate dose. Tr. 340. Although his pain had improved then and at various points throughout the record, the objective medical evidence indicates an overall narrative of chronic pain despite aggressive medication. *See* tr. 312, 317, 322, 325, 328, 329, 335, 343, 347, 359, 360, 392, 397, 410, 440. Contrary to the ALJ's finding that Plaintiff's conditions were generally controlled with medication, Plaintiff's pain appears unmanageable.

Although the ALJ cited normal findings on June 21, 2012 and September 18, 2012, he failed to mention the bilateral swelling of Plaintiff's feet and ankles and bilateral hand pain in the latter report. Tr. 69; *see* tr. 450, 444–45. The ALJ also discussed "generally mild findings" on October 7, 2014 and October 16, 2014. Tr. 72; *see* tr. 931, 1048. The first report showed pain elicited on palpation of the heel area but no significant foot or ankle deformities bilaterally. Tr. 931. The second report, however, revealed moderate, not mild, degenerative changes of the first interphalangeal joint joint and mild to moderate degenerative changes of the first metatarsophalangeal joint in Plaintiff's right foot. Tr. 1048.

The ALJ discussed negative laboratory findings, citing a January 16, 2013 report where Plaintiff had had hand pain of unclear etiology for one month and negative rheumatologic work. Tr. 68; *see* 418. Just eight days later, however, Dr. Mount diagnosed Plaintiff with chronic

inflammatory polyarthropathy, predominantly in the small joints of his wrists and hands, "in the setting of negative [rheumatoid arthritis] serology." Tr. 414. Additionally, plain imaging suggested mild degenerative changes in Plaintiff's hands. *Id.* The etiology was still unclear, but Dr. Mount opined that seronegative rheumatoid arthritis was a "likely possibility." *Id.*

The ALJ's emphasis on unremarkable and negative findings is misplaced. As explained above, Dr. Greene diagnosed Plaintiff with fibromyalgia on November 12, 2014. Tr. 1141. The record contains multiple references to fibromyalgia. *See* tr. 323 (finding tenderness to palpation at several fibromyalgia tender points on January 21, 2014), 325 and 499 (finding multifactorial process with possible contributions from fibromyalgia, among other things, and issues suggesting a "strong [fibromyalgia] component" on January 21, 2014), 1138 (finding very active fibromyalgia on December 31, 2014). Therefore, it is important to consider the objective medical evidence in the context of that diagnosis.

In *Revels v. Berryhill*, the Ninth Circuit discussed the "unique characteristics of fibromyalgia" in disability determinations. 874 F.3d 648, 652 (9th Cir. 2017).

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. *The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis*.
>
> *Id.* at 656 (emphasis added, internal quotation marks and citations omitted).

In addition to the lack of objective laboratory testing that might confirm the diagnosis, fibromyalgia symptoms are known to "wax and wane," and a person may have good days and bad days. *Id.* at 657. The ALJ must "consider a longitudinal record whenever possible" when determining the RFC of a claimant with fibromyalgia. *Id.* "In evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 662.

Under these circumstances, courts within the District of Oregon have been especially reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases. *See, e.g., Nunn v. Berryhill*, Case No. 6:17-cv-00203-SB, 2018 WL 2244705, at *10 (D. Or. May 16, 2018) (rejecting a lack of objective medical evidence as a valid factor in considering a fibromyalgia claimant's testimony); *Bair v. Comm'r of Soc. Sec. Admin.*, 3:17-CV-00622, 2018 WL 2120274, at *5 (D. Or. May 8, 2018) (holding the same). In light of *Revels*, this Court follows that example. Fibromyalgia is notable for the lack of objective medical tests and is often accompanied by apparently normal strength and musculoskeletal examinations. The lack of objective medical evidence cannot, therefore, serve as a clear and convincing reason for rejecting Plaintiff's testimony.

Turning to Plaintiff's activities of daily living, the ALJ noted that Plaintiff does laundry, performs light cleaning and light household repairs, walks, drives and rides in cars, and goes out alone. Tr. 71; *see* tr. 261. The ALJ also noted that despite alleged difficulty using his hands, he could turn a key, prepare a meal, push a heavy door open, make a bed, carry a shopping bag or briefcase, and use a knife to cut food, and had only mild coordination difficulty with his hands and dropping things as of May 2016. Tr. 71; *see* tr. 419, 1241.

Plaintiff's activities of daily living are consistent with his allegations. First, his activities are extremely limited. Plaintiff said that he does light chores throughout the day and must take a break when he starts to feel pain. Tr. 260. Sometimes he cannot even prepare meals because of pain and swelling in his hands and ankles. *Id.* He cannot mow the lawn due to joint pain. Tr. 260–61. When he does too much, he becomes debilitated for a week or two. Tr. 265. He needs help dressing and bathing when he has hurt himself. Tr. 259. His rheumatoid arthritis makes him cry when it flares up. Tr. 265. These qualifiers are consistent with Plaintiff's waxing and waning chronic pain. Second, Plaintiff's ability to walk, drive or ride in a car, and go out alone does not contradict any of his statements. He does not need to vegetate in a dark room in order to be eligible for benefits. *Molina*, 674 F.3d at 1112–13 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted).

Substantial evidence does not exist in the record to support the ALJ's finding that Plaintiff lacks credibility.

### **B. Plaintiff's Fibromyalgia**

The ALJ found that the evidence did not support a finding that Plaintiff's fibromyalgia medically equals a listing alone or in combination with another medically determinable impairment, such as musculoskeletal system, neurological disorders, mental disorders, and immune disorders. Tr. 66. Specifically, the ALJ found that the medical record did not evidence the requisite SSR 12-2p criteria, namely widespread pain in all four quadrants and at least 11 of 18 positive tender points. Tr. 64.

Had the ALJ properly credited Plaintiff's reports of pain and Dr. Greene's medical opinion, he would have found the requisite SSR 12-2p criteria. Plaintiff testified to widespread

pain, as discussed above, and reported pain throughout the record. Dr. Greene diagnosed Plaintiff with fibromyalgia, finding 18 out of 18 tender points. Tr. 1141. Because the ALJ erred in discounting Plaintiff's credibility and Dr. Green's medical opinion, he failed to properly evaluate Plaintiff's fibromyalgia.

### III. The ALJ's RFC Finding

In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, the ALJ found that Plaintiff had the RFC to perform light work and could:

> . . . occasionally balance, stoop, crouch, kneel, and crawl. . . never climb ladders, ropes, [or] scaffolds. . . occasionally reach overhead with both upper extremities. . . tolerate no exposure to concentrated airborne irritants. . . tolerate no exposure to extreme heat or to extreme cold. . . [and] have no exposure to hazards, such as machinery and unprotected heights.

Tr. 66. Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform past relevant work as a cashier/checker through the date last insured. Tr. 72. Plaintiff

argues that the ALJ erred by failing to include all of his impairments in the hypothetical posed to the vocational expert, particularly his fibromyalgia, back pain, carpal tunnel syndrome, and occasional blindness. Pl.'s Br. 6–7. Defendant argues that the diagnoses the ALJ did not credit were made after Plaintiff's date last insured and would not undermine the ALJ's decision anyway. Def.'s Br. 13.

The record does not even mention carpal tunnel syndrome until December 31, 2014, nor was Plaintiff diagnosed until February 9, 2015, well after his date last insured. *See* tr. 933, 942, 955, 967, 1138. Likewise, Plaintiff's vision loss did not begin until well after his date late insured, nor is it substantiated by objective medical evidence. *See* tr. 99, 1241 (finding visual disturbance but no acute findings in a recent brain MRI), 263 (indicating no trouble seeing), 138 (finding no visual limitation in RFC assessment), 152 (finding the same). As such, the ALJ did not err in excluding these impairments from the hypothetical. However, this Court already determined that the ALJ improperly rejected Dr. Greene's fibromyalgia and Dr. Walker's cervical spondylosis diagnoses and failed to consider certain objective medical and testimonial evidence of Plaintiff's back pain, as explained above. Therefore, the ALJ erred in failing to include these impairments in the hypothetical posed to the vocational expert. Therefore, the ALJ's RFC finding is not supported by substantial evidence in the record.

## IV. The Credit-as-True Doctrine

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. "Generally, when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Bernecke v. Barnhart*, 379 F.3d 587, 595

(9th Cir. 2004) (internal quotation marks and citations omitted). Under the "credit-as-true" doctrine, however, remand for calculation of benefits is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

If "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence," the issues should be resolved in further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (citations omitted). Even if all the requirements are met, the court may nevertheless remand "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act, such as when there are inconsistencies between testimony and the medical record, or if "the government has pointed to evidence in the record that the ALJ overlooked" and explained how that evidence belies disability. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted).

Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons for rejecting Plaintiff's credibility and Dr. Greene and

Dr. Walker's medical opinions. Credited as true, Plaintiff's allegations and those medical opinions, along with the vocational expert's testimony, establish that Plaintiff is disabled under the Act. The vocational expert testified that missing two or more days of work per month, having to lay down twice a day for twenty to thirty minutes, or being unable to stand for two hours a day and sit six hours a day on a regular basis would preclude a person from all employment. Tr. 117. Because Plaintiff has to lay down for thirty to sixty minutes four times per day every day, Plaintiff is disabled under the Act. *See* tr. 98. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

DATED this 12th day of April, 2019.

s/Michael J. McShane_____
Michael J. McShane
United States District Judge